IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DONALD E. SEYMOUR, ROBERT D. )
SEYMOUR, JOHN W. SEYMOUR, )
and RICHARD A. SEYMOUR )
 )
      Plaintiffs, )
 )
      v. ) Civil Action No. 09-0444
 )
LIFE CARE RETIREMENT )
COMMUNITIES, INC., )
 )
      Defendant. )

MEMORANDUM

Gary L. Lancaster,
Chief Judge.                                             June 21, 2010

      This is a tort action. Plaintiffs, Donald, Robert, John, and Richard Seymour are the surviving sons of Robert E. Seymour ("Mr. Seymour"). Defendant Life Care Retirement Communities, Inc., owns and operates the Friendship Village of South Hills Retirement Community ("Friendship Village"). Mr. Seymour was a resident of Friendship Village at the time of his death in August of 2008. He owned his residential unit and a storage garage at Friendship Village. Mr. Seymour's sons assert that Friendship Village personnel entered their father's storage unit after his death, and discarded his personal property. They bring claims under Pennsylvania law for conversion and intentional infliction of emotional distress and seek both compensatory and punitive damages.

Defendant has filed a motion for summary judgment arguing that due to the lack of evidence, and this court's lack of subject matter jurisdiction, judgment must be entered in its favor. [doc. no. 31]. For the reasons set forth below, we will grant defendant's motion as to the intentional infliction of emotional distress claim and dismiss this claim as a matter of law. Summary judgment will be granted with respect to the remaining conversion claim without prejudice, allowing plaintiffs to raise such claims in state court.

I. BACKGROUND

Defendant, an Iowa corporation, owns and operates Friendship Village located in the Western District of Pennsylvania. Mr. Seymour resided in an apartment at Friendship Village for a number of years. During his tenure as an apartment resident, Mr. Seymour entered into a contract with Friendship Village which granted him the right to occupy a garage located on the premises. Mr. Seymour's personal property came to be stored in the garage.

In August of 2008, Mr. Seymour died and the items of personal property stored in the garage passed, via a probated will, to his four sons, i.e. the plaintiffs. These items included, among other things, family and ancestral photographs, family histories, diaries, and letters, some of which dated back to the nineteenth century.

In October of 2008, one of the plaintiffs removed and discarded some items stored in the garage. The same plaintiff on that same day also boxed various other items that plaintiffs wanted to keep and left the boxes in the garage. Later that same day, defendant disposed of all remaining items in the garage, including those that plaintiff had boxed for retention. The items were irretrievably lost as a result of defendant's actions.

Plaintiffs sued defendant for conversion and intentional infliction of emotional distress in this court under 28 U.S.C. § 1332, claiming the parties were diverse and more than $75,000 was in dispute. Defendant filed a motion to dismiss the intentional infliction of emotional distress claim and plaintiffs' demand for punitive damages, which we denied. Discovery ensued and is now concluded. Defendant now moves for summary judgment claiming plaintiffs cannot prove either their conversion claim or intentional infliction of emotional distress claim.

II. STANDARD OF REVIEW

The Federal Rules provide that summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).

The mere existence of some factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. A dispute over those facts that might affect the outcome of the suit under the governing substantive law, i.e. the material facts, however, will preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Similarly, summary judgment is improper so long as the dispute over the material facts is genuine. Id. In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. Id. at 248-49.

To demonstrate entitlement to summary judgment, defendant, as the moving party, is not required to refute the essential elements of the plaintiff's cause of action. Defendant needs only point out the absence or insufficiency of plaintiff's evidence offered in support of those essential elements. See, Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Once that burden has been met, plaintiff must identify affirmative evidence of record that supports each essential element of his cause of action. If plaintiff fails to provide such

evidence, then he is not entitled to a trial, and defendants are entitled to summary judgment as a matter of law.

In summary, the inquiry under a Rule 56 motion is whether the evidence of record presents a genuine dispute over material facts so as to require submission of the matter to a jury for resolution of that factual dispute or whether the evidence is so one-sided that the movant must prevail as a matter of law. It is on this standard that the court has reviewed defendant's motion and plaintiffs' response thereto.

III. DISCUSSION

This case is based on diversity jurisdiction, 28 U.S.C. § 1332. As such, we apply Pennsylvania law. Thabault v. Chait, 541 F.3d 512, 521 (3d Cir. 2008) (a federal court sitting in diversity is required to apply the law of the state).

A. Intentional Infliction of Emotional Distress

Pennsylvania courts have never specifically recognized the tort of intentional infliction of emotional distress, but they have examined claims using the standards for that cause of action. See, Taylor v. Albert Einstein Med. Ctr., 754 A.2d 650, 652 (Pa. 2000) (finding that "[a]lthough we have never expressly recognized a cause of action for intentional infliction of emotional distress, and thus have never formally adopted this section of the Restatement, we have cited the section as setting forth the minimum elements necessary to sustain a cause of action"). According to

Pennsylvania's Supreme Court, the tort can be described as: "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." Kazatsky v. King David Memorial Park, Inc., 527 A.2d 988, 991 (Pa. 1987) (quoting Restatement (Second) of Torts, § 46(1)).

In Kazatsky, the Pennsylvania Supreme Court did not reach the question of whether the defendant's conduct was "outrageous" because of "a glaring failure in the chain of proof required to establish this claim." Id. at 992. The court found that plaintiffs presented "no expert testimony, indeed no evidence at all except their own unsubstantiated averments, concerning their alleged injuries." Id. The court went on to hold that, "[t]o permit recovery on the basis of such a questionable showing would necessitate a radical departure from settled principles of Pennsylvania tort doctrine." Id.

In Kazatsky, which is still valid law in the Commonwealth of Pennsylvania, the court further held:

> It is basic to tort law that an injury is an element to be proven. Given the advanced state of medical science, it is unwise and unnecessary to permit recovery to be predicated on an inference based on the defendant's "outrageousness" without expert medical confirmation that the plaintiff actually suffered the claimed distress. Moreover, the requirement of some objective proof of severe emotional distress will not present an unsurmountable obstacle to recovery. Those truly damaged should have little difficulty in procuring reliable

6

> testimony as to the nature and extent of their injuries. We therefore conclude that if section 46 of the Restatement is to be accepted in this Commonwealth, at the very least, existence of the alleged emotional distress must be supported by competent medical evidence.

Id. at 995. Because plaintiffs in Kazatsky failed to present any objective medical evidence of their mental injuries, the court dismissed the claim for intentional infliction of emotional distress.

Turning to the instant matter, defendant argues that plaintiffs failed to present any medical evidence that they sustained mental injury due to the alleged intentional actions of defendant. Plaintiffs fail to point to any evidence in response to this argument. Instead, plaintiffs argue that they do not need any such evidence. We disagree with plaintiffs. We find per Kazatsky, that the law in Pennsylvania is clear that objective proof of mental distress is a necessary component of an intentional infliction of emotional distress claim. Because it is undisputed that plaintiffs have no such objective evidence, defendant must prevail as a matter of law. Accordingly, this claim shall be dismissed.

B. Conversion

Conversion is the deprivation of another's right of property in, or use or possession of, a chattel, or other interference therewith, without the owner's consent and without lawful justification. Stevenson v. Economy Bank of Ambridge, 197

A.2d 721, 726 (Pa. 1964); see also, Universal Premium Acceptance Corp. v. York Bank and Trust Co., 69 F.3d 695, 704 (3d Cir. 1995) (same). The measure of damages for conversion is the market value of the converted property at the time and place of conversion. L.B. Foster Co. v. Charles Caracciolo Steel & Metal Yard, Inc., 777 A.2d 1090, 1096 (Pa. Super. 2001).

While the measure of damages for conversion is the market value of the converted property at the time and place of conversion, such a value is often unascertainable. Lynch v. Bridges & Co. Inc., 678 A.2d 414, 415 (Pa. Super. 1996) alloc. den. 694 A.2d 622 (Pa. 1997). However, it is well settled that mere uncertainty as to the amount of damages will not bar recovery where it is clear that the damages are the result of defendant's conduct. Id.

Defendant does not argue that plaintiffs cannot make a prima facie claim for conversion. Instead, defendant contends the conversion claim should be dismissed because: (1) plaintiffs cannot prove their damages to any degree of reasonable certainty; and (2) the amount in controversy (i.e., the value of the goods allegedly converted) fails to exceed the statutory threshold of $75,000. Although we disagree with defendant's first argument, we concur with the second, and therefore, must relinquish jurisdiction.

1. <u>Speculative Damages</u>

Based on Pennsylvania law as set forth in <u>Lynch</u>, we disagree with defendant's first argument that the conversion claim cannot proceed due to the speculative nature of the damages should a jury find defendant liable. In <u>Lynch</u>, employees of a subcontractor worked on a construction site during the week, and locked their personal tools in a "job box" located at the site on the weekends. <u>Id</u>. at 415. Because of a dispute between the subcontractor and the contractor, the subcontractor's employees were not permitted to return to the job site and were unable to retrieve their tools. <u>Id</u>. When the box was finally returned to the subcontractor, ninety percent of the employees' tools were missing. <u>Id</u>. The employees sued the contractor for conversion and were awarded the replacement value for the missing tools. <u>Id</u>. The Superior Court of Pennsylvania noted that the tools at issue were not new and "probably had little market value." <u>Id</u>. at 416. Despite this, the court held:

> Because the tools were old and had little market value does not mean that the tools were valueless, and that damages cannot be recovered by [the employees]. The trial judge, si[t]ting as fact finder has broad discretion to determine damages in conversion cases. Indeed, it is the traditional function of the fact finder in conversion actions to estimate damages.

<u>Id</u>. (internal citation and quotations omitted).

Similarly in <u>Delahanty v. First Pennsylvania Bank, N.A.</u>, the court held:

> The determination of damages is a factual question to be decided by the fact-finder. ... This duty of assessing damages is within the province of the fact-finder and should not be interfered with unless it clearly appears that the amount awarded resulted from partiality, caprice, prejudice, corruption or some other improper influence. ... The fact-finder must assess the worth of the testimony, by weighing the evidence and determining its credibility, ..., and by accepting or rejecting the estimates of the damages given by the witnesses.

Id., 464 A.2d 1243, 1257 (Pa.Super. 1983) (internal citations omitted).

Turning to this case, defendant essentially argues that because plaintiffs supplied no objective valuation for the destroyed items, their damages are too speculative, and thus, the conversion claim cannot be submitted to a jury. First, damages are not an element of conversion under Pennsylvania law. Second, Pennsylvania law clearly holds that where conversion lies, the fact-finder determines the value of the converted chattel. Moreover, under the facts present here, it is undisputed that defendant destroyed the personal property at issue rendering plaintiffs unable to obtain an appraisal for any item that may have had some actual market value. If the fact-finder determines that defendant is liable for the tort of conversion, then defendant should not be able to avoid paying damages simply because it destroyed plaintiffs' property rendering plaintiffs unable to obtain an appraisal for any items that could have been appraised.

2. Amount in Controversy

Although the speculative nature of the value of the items converted would not generally preclude plaintiffs from proceeding to a jury, defendant has challenged this court's subject matter jurisdiction based on the speculative nature of the amount in controversy. Defendant contends that the speculative nature of the damages renders plaintiffs unable to prove that the matter before this court exceeds the statutory threshold of $75,000. Plaintiffs respond by claiming that unless it is evident to a legal certainty that they cannot recover above the statutory minimum of $75,000, jurisdiction properly rests in federal court. We disagree with plaintiffs' contention that the legal certainty standard applies. Applying the appropriate preponderance of the evidence standard, we find that plaintiffs have failed to convince this court that they have met the $75,000 amount in controversy jurisdictional requirement.

In St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283 (1938), and McNutt v. General Motors Acceptance Corp. of Indiana, 298 U.S. 178 (1936), the Supreme Court discussed the burden of proof in situations where jurisdiction turned on the amount in controversy. In McNutt, plaintiff brought suit in federal court claiming the amount in controversy reached the jurisdictional threshold, but defendant denied this in its answer. In reversing and remanding the case back to the trial court, the McNutt Court

noted that the trial court had failed to make an adequate finding on the jurisdictional facts at issue (i.e., the amount in controversy) and found the record devoid of evidence supporting plaintiff's allegation that the amount in controversy threshold had been met. The Court in McNutt held, "[i]f [plaintiff's] allegations of jurisdictional facts are challenged by his adversary in any appropriate manner, he must support them by competent proof. ... [A]nd for that purpose the court may demand that the party alleging jurisdiction [must] justify his allegations by a preponderance of the evidence." McNutt, 298 U.S. at 189. McNutt makes it clear that whichever party asserts federal jurisdiction, if the opposing party challenges it, the asserting party will have to prove, by a preponderance of the evidence, the appropriateness of federal jurisdiction.

In Red Cab, plaintiff sued in state court but defendant removed the case to federal court. Plaintiff did not object to the removal, and in fact, its complaint and amended complaints alleged damages in excess of the statutory threshold. However, a document attached to plaintiff's pleadings illustrated damages well below the threshold. After waiver of a jury trial, the district court entered findings, conclusions, and a judgment in favor of the plaintiff, but in an amount well below the statutory jurisdictional threshold. On appeal, the Court of Appeals refused to decide the case on the merits on the grounds that the district court should

12

have remanded the matter to state court upon finding that the record showed the amount in controversy failed to meet the statutory jurisdictional threshold. The Court in Red Cab held that the rule for determining whether the case involves the requisite amount turns on whether "from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount." Red Cab, 303 U.S. at 289.

In reconciling McNutt and Red Cab, the Court of Appeals for the Third Circuit in Samuel-Bassett v. Kia Motors America, Inc., 357 F.3d 392 (3d Cir. 2004), disentangled the "preponderance of the evidence" and "legal certainty" approaches by distinguishing them on the grounds of whether the jurisdictional dispute surrounded factual matters. Samuel-Bassett, 357 F.3d at 397. In Samuel-Bassett, the Court of Appeals examined the district court's subject matter jurisdiction and found that the record did not reflect whether the amount in controversy had been met. Id. at 395. The Court concluded that the Red Cab legal certainty test applied, but remanded the case for fact-finding on the amount in controversy. Id. at 403.

The Court of Appeals for the Third Circuit further clarified the standard in Frederico v. Home Depot, 507 F.3d 188 (3d Cir. 2007), stating that when parties dispute factual

13

jurisdictional matters, the McNutt preponderance of the evidence standard applies, but when relevant facts are not in dispute or when findings of fact have been made, the Red Cab legal certainty standard applies. Frederico, 507 F.3d at 194 (relying on Samuel-Bassett 357 F.3d at 398).

Like McNutt, plaintiffs in this case initiated this lawsuit in federal court claiming damages in excess of the statutory threshold of $75,000 (which includes a demand for punitive damages). Like McNutt, defendant's answer denied that the amount in controversy threshold could be met. Defendant has raised the issue again in its motion for summary judgment. Plaintiffs, as the parties asserting federal jurisdiction, bear the burden of showing that the case is properly before the federal court. McNutt, 298 U.S. at 189.

Although plaintiffs urge us to apply the Red Cab "legal certainty" standard, we cannot do so because, like McNutt, there exists a jurisdictional dispute surrounding factual matters, and to date, no evidence or findings by this court have addressed that issue. Accordingly, we must apply the preponderance of the evidence standard set forth in McNutt.

Moreover, as recently noted by our sister court in Martin v. Wal-Mart Stores, Inc., plaintiffs "cannot avoid their burden of establishing this Court's subject-matter jurisdiction by expecting that jurisdiction will be assumed unless disproven." Id.,

--- F.Supp.2d ---, 2010 WL 1753385 at *4 (D.N.J. April 30, 2010). Even though this case involves a claim for conversion, and not negligence, we agree in principle with the court's rationale in Martin where it concludes that:

> [t]he Court should not be rendered powerless to question whether virtually any simple negligence claim satisfies the amount-in-controversy requirement just because a plaintiff's mere assertion of injury creates some possibility that his recovery might exceed the jurisdictional minimum. This consequence effectively eliminates the amount-in-controversy requirement in negligence cases, turning the controlling constitutional principle on its head. The Court cannot countenance such a result.

Id.

Although plaintiffs offer their own testimony essentially indicating that the destroyed items held great personal value, we find this proffer, without anything more, inadequate to meet the preponderance of the evidence standard. As noted above, in light of the factual, jurisdictional challenge raised by defendant, plaintiffs needed to proffer evidence to substantiate their claim that damages exceed $75,000. Our review of the record before us shows no evidence other than general statements made by the plaintiffs that the amount in controversy exceeds the threshold.

District Courts are courts of limited jurisdiction, and possess only that power authorized by the Constitution and by statute. Exxon Mobil Corp. v. Allapattah Services, Inc., 545 U.S. 546, 552 (2005). In this case, plaintiffs bear the burden to prove

all elements of the jurisdictional requirements. See, McNutt, 298 U.S. 189 ("The prerequisites to the exercise of jurisdiction ... are conditions which must be met by the party who seeks the exercise of jurisdiction in his favor. He must allege in his pleading the facts essential to show jurisdiction."). Plaintiffs general contention, without more, that the loss of their personal property exceeds $75,000, may be a sufficient basis upon which damages may be awarded under Pennsylvania law for conversion, but it does not dispense with the requirement in federal court that jurisdictional facts must be proven by a preponderance of the evidence. Instead, such a statement amounts to no more than mere speculation or conjecture and a district court does not consider claims based on speculation or conjecture when determining the amount in controversy. Columbia Gas Transmission Corp. v. Tarbuck, 62 F.3d 538, 543-44 (3d Cir. 1995).

Accordingly, we must grant the motion for summary judgment on jurisdictional grounds. However, we do so without prejudice to plaintiffs to reassert their conversion claim in the state forum.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DONALD E. SEYMOUR, ROBERT D. )
SEYMOUR, JOHN W. SEYMOUR, )
and RICHARD A. SEYMOUR )
 )
      Plaintiffs, )
 )
  v. ) Civil Action No. 09-0444
 )
LIFE CARE RETIREMENT )
COMMUNITIES, INC., )
 )
      Defendant. )

## ORDER

AND NOW, this 21st day of June, 2010, IT IS HEREBY ORDERED that defendant Life Care Retirement Communities, Inc.'s motion for summary judgment [doc. no. 31] is GRANTED. This case is dismissed without prejudice to plaintiffs to reassert their conversion claim in state court.

BY THE COURT:

_____, C. J.

cc:     All Counsel of Record